*610
By the Court:

Spencer, J.
The main questions in this case were questions of fact—namely: the employment of plaintiff under the contract, and his discharge by the defendants, and their subsequent neglect or refusal to continue the employment of defendant—and were properly submitted to the jury by the court below.
The jury had a right to accept the testimony of plaintiff as-to what transpired after he went to New York, and to reject that of defendant, and assuming that they did so, there was sufficient evidence to sustain their verdict; but the fact testified to by plaintiff that he was actually discharged from the service of the defendants, by the order of defendant, Max Friedman, is not contested nor denied. The fact that plaintiff afterwards, at the request or by the order of defendant went to New York, and there met him for further orders, and for payment of the week’s wages due on the 21st of April, does not change the effect of •this discharge at the latter date.
Under these facts and circumstances, I am of the opinion that no formal tender of service was necessary; but if I am wrong in ■this conclusion, it appears to me that it sufficiently appears from .the evidence that the plaintiff met defendant Max Friedman afterwards as directed, and held himself subject to his order ,* in ■other words, “ was ready and willing to resume work under the contract,” and I think the jury had a right to base a verdict upon •those facts, and it should be sustained.
H the foregoing views are correct, it follows that the ruling of the court, in refusing to nonsuit or to dismiss the complaint, was correct, and thus I hold. I also think the court below was right in the exclusion of the testimony offered by defendant, to explain the meaning of words “ unavoidable accident,” as used in the contract.
This was not .a qualification or limitation in the contract that required any notice in the complaint, nor one in reference to which plaintiff was bound to furnish any testimony. The cases •cited by appellants’ counsel are not in my opinion applicable to *611 a clause of this kind in a contract. The forms of bills of lading and common carrier contracts that recite the exceptions of “the dangers of the seas,” “the act of God, and the public enemies,” etc., are of a kindred character to the exceptions in this contract. Although it might be a proper matter of defense for defendants to plead and prove that this contract was rendered void by “ unavoidable accident,” “ breach of faith” or by “ mutual consent,” yet I think it was not incumbent upon plaintiff to charge or prove the negative proposition, that none of the facts or acts embraced in these several exceptions had occurred. The words “ unavoidable accident ” are synonymous with “ inevitable accident.” The latter words, and their meaning and effect, have been considered and interpreted many times by our courts. They have been considered as intelligible to the courts, and as plain and unambiguous, and having a clear and accepted meaning.
Ho evidence as to the meaning of the words “ unavoidable accident ” could have been properly received by the court or submitted to the jury. The defendants proposed to show that a prospective "lack of material of manufacture was embraced in these words, a meaning so contrary and inconsistent with the ordinary and accepted interpretation of the same, that any person of ordinary understanding of the English language would readily perceive that the effect and terms of a contract in writing might be destroyed by the introduction of such testimony, and I hold it was properly rejected by the learned judge before whom the case was tried.
The only other exception in the case that I think demands consideration, is that to the ruling of the court in excluding the answer to two questions asked of the plaintiff:
First.—Had you nothing to do after you came to Hew York prior to the 17th day of August, 1867 ?
Second.—Prior to the 17th day of August did you endeavor to obtain a situation %
Immediately prior to these questions being asked, the witness had stated upon defendants’ inquiry (in substance) that since *612 he came to New York he had been looking for work and could get none, and immediately after these questions were excluded • by the court, the following questions and answers occurred :
Q. Between the 22d of June, 1867, and the 17th August, 1867, did you endeavor to obtain a situation ?
A. I did.
Q. Where %
A. I called at Haldeberg’s, Broadway, Wolf’s and several other places, but the season being over, I could not get work; also applied to Silverman, Broadway. I worked in my own house between the 22d of June, 1867, and the 17th of August, a little,but don’t think I earned $5 during the whole time. ■
I hold that these last questions and answers brought out and fully established, as evidence in the case, the facts sought by the excluded questions; or in other words, the evidence sought by the defendant in the questions, excluded, was introduced and obtained by and allowed to him under another form of question; and if there was error in the exclusion of the evidence under the first questions, it was corrected and obviated by its reception under the subsequent questions, and I can see no cause for a ■ reversal on account of these exceptions. The requests made by defendant to the court to charge, and which were refused, and exceptions taken, were based upon the condition or hypothesis that plaintiff had left the factory and service of defendants at Philadelphia voluntarily, and without the consent or assent of defendants. The only testimony upon that point is that of plaintiff heretofore reviewed, which shows or tends to show that plaintiff was discharged by defendants, and that he left in consequence thereof, and went to New York by request of defendants.
■ I think the evidence did not authorize the court to charge as requested, and it would have been error to have done so, or at least the court was not bound to charge as requested upon the evidence before it.
The exceptions should be overruled, and the judgment of the court below sustained.